## APPEAL OF BEADLESTON & WOERZ, INC.

Docket No. 6033.   Decided October 21, 1926.

1. Taxpayer is not entitled to deduct from its gross income its reserve for liability on account of unreturned bottles and cases in making its income and profits-tax returns for the taxable years.

2. Taxpayer's alleged loss on account of obsoleteness of buildings resulting from Federal prohibition legislation disallowed for lack of evidence.

*William J. Hughes, Jr., Esq.*, and *Louis Malthaner, Esq.*, for the petitioner.

*Arthur H. Murray, Esq.*, and *James T. Dortch, Esq.*, for the Commissioner.

This appeal is from the determination of a deficiency of $4,901.73 for the year 1919, arising from the disallowance of depreciation of $24,295.26, claimed on buildings, and $40,689.57, representing one-half of the alleged loss on bottles used in the business. The petition was amended at the hearing and is now based on the Commissioner's refusal to allow a deduction of $5,585.04 on account of deposits made with the taxpayer by purchasers of bottled goods to secure the return of the bottles, and $121,712.87 for the complete loss of a building erected for the storage of lager beer for fermentation.

### FINDINGS OF FACT.

1. Prior to the adoption of war-time prohibition, the taxpayer was engaged in the manufacture and sale of lager beer, ales, porter and ice. After the adoption of the National Prohibition Amendment it gave up the manufacture of intoxicants and engaged during 1919 in the manufacture and sale of near beer. Finding this unprofitable, it abandoned entirely the manufacture of drinks. It now has but two employees—a manager, who is an invalid, and a bookkeeper.

2. The appeal, as originally stated, was from the disallowance of the following deductions claimed by the taxpayer:

Depreciation of building, etc., at 201—10th St., Borough of Manhattan_____ $24, 295. 26.

Loss on bottles (inventory)_____ 40, 689. 57.

Taxpayer, by its amended petition, abandoned both of these claims and submitted a claim for deductions on account of deposits for return of bottles and obsolescence of the fermentation building.

3. The building in question was erected some 36 years ago. All records as to its cost have been destroyed or lost. It was built for the sole purpose of storing the beer manufactured by the company during fermentation. It is a five-story and basement brick building, 68 feet, 8 inches, by 89 feet, 4 inches, having concrete floors, supported by very substantial steel pillars. The height of the basement was about 15 feet, that of the first story about 25 feet, of the second story about 20 feet, and of the other three about 15 feet each. Within the building, some on each floor, were 23 vats having a capacity of from 200 to 350 barrels each. Some of these were of wood, but the large ones were steel glass-lined tanks or casks. The building is lighted electrically and has only about a dozen windows. It has a complete refrigerating system for keeping the beer cool.

4. On July 1, 1913, an appraisal company made a survey and inventory of 35 buildings and of the equipment therein owned by the petitioner, and reported that the reproduction cost new, of the fermentation and storage building and its contained equipment at that date was $97,215.78 for the building and $24,497.09 for the equipment. To these results it applied depreciation rates from the dates of construction or purchase of such assets to March 1, 1913, and arrived at the conclusion that the sound value of such property was $96,844.60 at the basic date.

Prior to 1918 the petitioner, in making its income and profits-tax return, made no deductions on account of depreciation of its plant and equipment. As the result of an investigation made in 1918, the petitioner estimated that the additional useful life of its brick buildings was 35 years, and on that basis it claimed and was allowed depreciation on such buildings, including the storage building, at the rate of 2.6 per cent for 1918 and 1919.

OPINION.

LANSDON: We are of the opinion that the claim on account of reserve for unreturned bottles is covered by the Board's decision in the *Appeal of LaSalle Portland Cement Co.*, 4 B. T. A. 438. In so far as can be ascertained from the evidence before us, a price for the bottles sufficient to cover the cost to the taxpayer was charged to and paid by the vendee. The taxpayer was to pay the vendee the

same price on the return of the bottles. If so, the taxpayer neither lost nor gained by the bottle transaction. They were neither more nor less than a commodity purchased and sold at cost or near cost, in order to effect the sale of the beer. On their purchase they came into taxpayer's inventory. On their sale they passed out of the inventory. If the vendee returned them in good condition, taxpayer would pay for them and they would again come into the inventory. Neither the amount of taxpayer's income nor its capital is affected by any of these transactions or by the failure to complete one or more of them. The decision of the Commissioner as to this claim is affirmed.

The petitioner asks for a substantial deduction from its gross income for the taxable year on account of the obsoleteness of a building and equipment used for the storage and fermentation of beer. This deduction seems to be claimed on the theory that the building was abandoned and became a total loss in 1919, at which date it is alleged the petitioner ceased the manufacture of beer. There is no competent evidence in support of this claim. We do not know when the building was constructed or at what cost. The only evidence of value at March 1, 1913, offered by the taxpayer was an appraisal made on what is known as the depreciated reproductive cost basis. The Commissioner objected to the receipt of this appraisal as evidence. As the man who made such appraisal was not present at the hearing, we must sustain this objection. Lacking evidence of the cost of the building and equipment, of the value of such assets at March 1, 1913, and in the taxable year, we approve the determination of the Commissioner on this point.

*Judgment will be entered on 10 days' notice, under Rule 50.*